# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY,<br><br>                                    Plaintiff,<br>   vs.<br>SHAH & ASSOCIATES, INC., dba PDC CORPORATION,<br><br>                                    Defendant.<br>SHAH & ASSOCIATES, INC., dba PDC CORPORATION,<br><br>                                    Counterclaimant,<br>   vs.<br>ADMIRAL INSURANCE COMPANY,<br><br>                                    Counterdefendant. | CASE NO. 13cv44-WQH-JMA<br><br>ORDER |

HAYES, Judge:

      The matters before the Court are the Motion for Stay filed by Defendant/Counterclaimant Shah & Associates, Inc. ("Shah") (ECF No. 10), and the Motion to Dismiss the Counterclaim filed by Plaintiff/Counterdefendant Admiral Insurance Company ("Admiral") (ECF No. 17).

## I. Background

      Shah has been continuously insured by Admiral for professional liability since April 21, 2009. (Shah Decl. ¶12, ECF No. 10-2). Admiral issued to Shah an Architects

& Engineers Professional Liability Policy (the "Policy") for the policy period of April 21, 2011 to April 21, 2012. (Compl., Ex. A at A-2, ECF No. 1-1). The Policy states that Admiral has "the right and duty to defend any 'claim' or suit against the 'Insured' seeking 'damages' because of a 'professional incident,' even if any of the allegations of the suit are false or fraudulent." *Id.* at A-5. The Policy contains a number of conditions and limitations on coverage, including a condition of coverage that "prior to the effective date of this policy, no 'Insured' had knowledge of a 'professional incident' or circumstance that could reasonably be expected to result in a 'claim.'" *Id.* The Policy defines "professional incident" to mean "a negligent act, error or omission in the rendering of or failure to render 'professional services' by you or a person acting under your direction, control or supervision and for whose acts, errors or omissions you are legally liable." *Id.* at A-7. The Policy defines "professional services" to mean "work performed by you for others involving specialized training, knowledge and skill in the pursuit of the business stated in the declarations." *Id.* at A-7. The Policy describes Shah's business as "Telecommunications Design and Engineering Services." *Id.* at A-2. The Policy also contains exclusions which state:

> This policy does not apply to: ...
>
> E. any liability based upon or arising out of any 'professional incident' or circumstances that any 'Insured' knows or should reasonably anticipate would result in a 'claim' prior to the effective date of this policy; ...
>
> M. any liability based upon or arising out of the deficiency or malfunction of any product, process, technique or equipment which is sold, manufactured or furnished by or on behalf of the 'Insured'; ...
>
> V. any liability based upon or arising out of any construction, demolition, erection, excavation or the assembly or installation of components or equipment; ....

*Id.* at A-7, A-8.

This action arises out of a lawsuit captioned, *Allen, et al. v. NRC Systems. Inc., et al.*, filed on November 15, 2011 in the Sacramento County Superior Court, Case No. 34-2011-00114009 ("the *Allen* lawsuit"). (Compl. ¶ 8, ECF No. 1). The *Allen* lawsuit

was filed by the survivors of Stephen Allen and the owner of the airplane Allen piloted on the day of his death. Allen was killed on January 10, 2011 when the crop-dusting airplane he was flying over property known as "the Webb Tract" in Contra Costa County, California, crashed into an unmarked meteorological tower (the "MET tower"). *Id.* The defendants in the *Allen* lawsuit are alleged to be the owners and managers of property on which the MET tower was located, the company with farming rights on the property, a seed supplier, and the companies which designed, manufactured and constructed the MET tower. *Id.* ¶ 9. Shah is alleged to be one of the companies responsible for erecting the MET tower on the Webb Tract. *Id.* The complaint in the *Allen* lawsuit ("*Allen* complaint") pleads claims for wrongful death based upon both strict liability and negligence theories, and seeks compensatory and punitive damages. (Compl., Ex. B at B-33, B-38, ECF No. 1-1). The *Allen* complaint pleads issues relating to the design, manufacturing, construction, permitting, installation, erection, and failure to warn about the existence of the MET tower. *Id.* at B-36, 37, 39, 40. The *Allen* complaint alleges:

> All Defendants were the agents, employees, contractors, joint venturers and partners of each other, and/or had some other relationship imposing vicarious liability on each Defendant for the acts and/or omissions of each of the other Defendants. At all times, each of the Defendants was acting within the course and scope of said agency, employment, contract, joint venture, or other relationship, and with the permission, knowledge and consent of each of the other Defendants.

*Id.* at B-34.

In early December 2011, "shortly after service" of the *Allen* complaint, Shah tendered the defense to Admiral. (Shah Decl. ¶ 3, ECF No. 10-2). On December 15, 2011, Admiral denied coverage. (Shah Decl, Ex. 1, ECF No. 10-5). In the denial letter, Admiral stated:

> You have advised that both you and your project manager, Paulo Pueliu, were aware of the accident which occurred on January 10, 2011 when Mr. Pueliu was contacted by an investigator who indicated that legal action was being contemplated. You both acknowledged that you had a concern that if a lawsuit was filed, Shah & Associates could be implicated; however, you did not report this matter to Admiral during the relevant policy period nor indicate it on the application for renewal of this insurance which was signed on March 16, 2011.

> In view of the foregoing, it is clear that you had knowledge of a 'professional incident' or circumstance that could reasonably be expected to result in a claim prior to the effective date of Admiral's policy in violation of the Insuring Agreement. Additionally, exclusion E precludes coverage for this matter. ...
>
> Accordingly, Admiral disclaims coverage and will neither defend nor indemnify Shah & Associates in this litigation.

*Id.* at 3-4. Admiral reversed its denial on August 27, 2012 and issued a letter on September 19, 2012 stating that "Admiral presently agrees to participate in the defense of [Shah] in the *Allen* lawsuit," but reserving its rights to dispute coverage on numerous issues. (Shah Decl. ¶¶10-11, Ex. 4, ECF No. 10-8).

On January 8, 2013, Admiral initiated this action by filing a Complaint in this Court against Shah, alleging diversity jurisdiction. (Compl., ECF No. 1). Admiral seeks a declaration that it owes no duty to defend or indemnify Shah and reimbursement for defense costs paid. As stated in its Complaint, Admiral seeks to prove:

a. an insured had knowledge of a 'professional incident' or circumstance that could reasonably be expected to result in a 'claim' prior to the inception of the Admiral Policy on April 21, 2011;

b. the 'professional incident' or circumstance that could reasonably be expected to result in a 'claim' was not disclosed on Shah's application for insurance;

c. the Underlying Action arises out of the alleged deficiency or malfunction of one or more products, processes, techniques or equipment sold, manufactured or furnished by or on behalf of Shah;

d. the Underlying Action arises out of the construction, erection, assembly or installation of components or equipment; and

e. the Underlying Action does not result from a 'professional incident' involving specialized training knowledge and skill in the pursuit of the business stated in the Declarations, which is 'Telecommunications Design and Engineering Services.'

*Id.* ¶ 15.

On April 2, 2013, Shah filed a Counterclaim against Admiral, alleging breach of contract and breach of the implied covenant of good faith and fair dealing arising out of Admiral's initial refusal to defend Shah in the *Allen* lawsuit. (ECF No. 9).

On April 2, 2013, Shah filed the Motion for Stay. (ECF No. 10). On April 22,

1 | 2013, Admiral filed an opposition to the Motion for Stay. (ECF No. 11). On April 29, 2013, Shah filed a reply and objections to evidence submitted by Admiral. (ECF No. 16).

On May 7, 2013, Admiral filed the Motion to Dismiss the Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 17). On May 24, 2013, Shah filed an opposition (ECF No. 18), and on June 3, 2013, Admiral filed a reply (ECF No. 3).

## II. Motion for Stay

### A. Contentions of the Parties

Shah requests that the Court stay this action pending final disposition of the *Allen* lawsuit. Shah contends that the issues in this action substantially overlap with those at issue in the *Allen* lawsuit, and prosecution of this action may prejudice the defense of the *Allen* lawsuit, warranting a stay in accordance with the principles stated in *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 302 (1993). Shah contends:

> [T]o rebut Admiral's Second Cause of Action seeking a declaration that it has no duty to indemnify Shah with regard the underlying action, Shah will have the burden to establish that its liability arose from 'a negligent act, error or omission in the rendering of, or failure to render, professional services.' The prejudice to Shah of being forced to prove its own negligence, while defending a lawsuit alleging such negligence, is self-evident.

(ECF No. 10-1 at 6). Shah contends that "Admiral's efforts to prove that Shah had prior knowledge of 'circumstances' that would give rise to a claim also carry the potential to prejudice Shah's defense because the plaintiffs in the underlying action also seek to prove that Shah had prior knowledge of facts that it knew or should have known created a hazard to air traffic, so that they can assert that Shah's conduct was willful to support an award of punitive damages." *Id.*

Admiral contends:

> Admiral will establish that it has no duty to defend or indemnify Shah in the *Allen* lawsuit because the Allen plaintiffs' claims—whether meritorious or not—are by their nature not covered under the Admiral Policy. To assess Admiral's position, the Court need not parse the underlying facts or determine the merit of the underlying claims, so there is no risk of inconsistent determinations or overlap between the issues at

work in the *Allen* lawsuit.

(ECF No. 11 at 2). Admiral contends that there is no potential for coverage for the *Allen* lawsuit under the Policy for the following reasons:

> [P]rior to the effective date of the Policy on April 21, 2011, Shah had knowledge of a 'professional incident' or circumstance that could reasonably be expected to result in a claim; the 'professional incident' or circumstance was not disclosed on Shah's application for insurance; the *Allen* lawsuit arises out of the alleged deficiency or malfunction of one or more products, processes, techniques or equipment sold, manufactured or furnished by or on behalf of Shah; the *Allen* lawsuit arises out of the construction, erection, assembly or installation of components or equipment; and the *Allen* lawsuit does not result from a 'professional incident' involving the specialized training, knowledge and skill in the pursuit of the business stated in the Declarations, which is 'Telecommunications Design and Engineering Services.' None of these issues are issues in the *Allen* lawsuit.

*Id.* at 3-4. Admiral contends that this action should not be stayed, or, alternatively, Admiral requests that the Court bifurcate those issues in this case which overlap with the *Allen* lawsuit from the other issues which do not overlap with the *Allen* lawsuit.

**B. Applicable Law**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "[A] district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment.... In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). The Court of Appeals for the Ninth Circuit has stated:

> The *Brillhart* [*v. Excess Insurance Co.*, 316 U.S. 491 (1942)] factors remain the philosophic touchstone for the district court. The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory relief actions as a means of forum shopping; and it should avoid duplicative litigation. If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court. The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief. Nonetheless, federal courts should generally decline to

entertain reactive declaratory actions.

*G.E.I.C.O. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (citations omitted).

Under California law, "[t]o eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action." *Montrose*, 6 Cal. 4th at 301-02 (citations omitted). The rationale behind this rule is as follows:

> There are three concerns which the courts have about the trial of coverage issues which necessarily turn upon facts to be litigated in the underlying action. First, the insurer, who is supposed to be on the side of the insured and with whom there is a special relationship, effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit; second, such a circumstance requires the insured to fight a two front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions—this effectively undercuts one of the primary reasons for purchasing liability insurance; and third, there is a real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insured could be collaterally estopped to contest issues in the latter by results in the former.

*Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963, 979 (1995) (citation omitted). "It is *only* where there is *no* potential conflict between the trial of the coverage dispute and the underlying action that an insurer can obtain an early trial date and resolution of its claim that coverage does not exist." *Id.* (citation omitted). "When such a potential conflict exists, a district court should enter a stay." *Progressive Cas. Ins. Co. v. Dalton*, 2:12-CV-00713, 2012 WL 6088313, at *11 (E.D. Cal. Dec. 6, 2012). "Federal courts in California have followed the *Montrose* rule." *Id.*; *see also OneBeacon Ins. Co. v. Parker, Kern, Nard & Wenzel*, No. 1:09-CV-00257, 2009 WL 2914203, at *4 (E.D. Cal. Sept. 9, 2009).

### C. Discussion

"An insurer has a very broad duty to defend its insured under California law. The California Supreme Court has stated that 'the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that

would be covered under the policy.'" *Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002) (quoting *Montrose*, 6 Cal. 4th at 299). The duty to defend extends to "*all* claims potentially within policy coverage, even frivolous claims unjustly brought." *Horace Mann Ins. v. Barbara B.*, 4 Cal. 4th 1076, 1086 (1993). "[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy."[1] *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995) (citation omitted).

Admiral alleges that it has no duty to defend or indemnify Shah based upon Policy exclusions E., M. and V. (Compl. ¶ 15, ECF No. 1). In alleging that Policy exclusion E. applies, Admiral alleges that Shah "had knowledge of a ... circumstance that could reasonably be expected to result in a 'claim' prior to ... April 21, 2011." *Id.* In support of their claim for punitive damages, the *Allen* complaint alleges that Shah "knew ... that the 'MET' tower installed on the 'Webb Track' property constituted a hazard to air traffic." (Compl., Ex. B at B-12, ECF No. 1-1). With respect to exclusion E., Admiral in this action and the *Allen* plaintiffs in the *Allen* lawsuit will each attempt to show that Shah had prior knowledge of circumstances that would give rise to the incident at issue.[2]

In alleging that Policy exclusion M. applies, Admiral alleges that "the [*Allen* lawsuit] arises out of the alleged deficiency or malfunction of one or more products ... or equipment sold, manufactured or furnished by or on behalf of Shah." (Compl. ¶ 15,

---

[1] Instead of comparing the Policy to the *Allen* complaint, Admiral focuses on the "brief statement of the case" filed by the *Allen* plaintiffs in their case management statement. (ECF No. 11-4). Admiral cites no authority indicating that a "brief statement of the case" in a case management statement supercedes the allegations of the complaint, or that a court may disregard the allegations of the underlying complaint in favor of a case management statement in determining whether an insurer has a duty to defend.

[2] In its opposition brief, Admiral "contends that Shah had knowledge of circumstances that a reasonable person would result in a claim being made against it because of the telephone call from an investigator in January of 2011 investigating a person's death after colliding with the MET Tower..., not because Shah's conduct in connection with its work on the MET Tower was knowingly wrong." (ECF No. 11 at 7). However, Admiral's Complaint is not limited to the single circumstance of a phone call in January 2011 or to any specific time frame.

ECF No. 1). The *Allen* complaint alleges that *Allen* defendants NRG Systems and Renewable Resources Group "manufactured [and] sold" the "MET" tower, which was "defectively ... manufactured" and caused the death of Stephen Allen. (Compl., Ex. B at B-36, ECF No. 1-1). The *Allen* complaint alleges that "[a]ll Defendants were the agents, employees, contractors, joint venturers and partners of each other ... imposing vicarious liability on each Defendant for the acts and/or omissions of each of the other Defendants." *Id*. at B-34. With respect to exclusion M., Admiral in this action and the *Allen* plaintiffs in the *Allen* lawsuit will each attempt to show that Shah is liable for deficiencies in the manufacture or sale of the MET tower.

In alleging that Policy exclusion V. applies, Admiral alleges that "the [*Allen* lawsuit] arises out of the construction, erection, assembly or installation of components or equipment." (Compl. ¶ 15, ECF No. 1). The *Allen* complaint alleges that Shah was hired "for the erection of the ... 'MET' tower." (Compl., Ex. B at B-38, ECF No. 1-1; *see also* ECF No. 11-4 at 7 (the Allen plaintiffs allege the same in the "brief statement of the case" in their case management statement)). The *Allen* Complaint alleges that Shah "negligently and carelessly selected, installed, erected and otherwise cause[d] to exist the ... 'MET' tower on the 'Webb Tract' property." *Id*. at B-39. With respect to exclusion V., Admiral in this action and the *Allen* plaintiffs in the *Allen* lawsuit will each attempt to show that Shah erected or installed the MET tower on the Webb Tract.

Admiral contends that "[t]he coverage issue to be decided in the declaratory relief action is whether Shah could potentially be held liable for its telecommunications design or engineering services as opposed to supplying, installing, or erecting the MET tower because only the former is covered by the Admiral Policy." (ECF No. 11 at 4). Admiral contends that "[t]he design allegations as to the MET tower are not directed towards Shah, but instead are only directed against [Shah's *Allen* co-defendants] NRG Systems and RRG." *Id*. at 5. The Policy covers negligent acts, errors, or omissions in "the rendering of or failure to render 'professional services' by ... a person acting under [Shah's] direction, control or supervision and for whose acts, errors or omissions [Shah is] legally liable." (Compl., Ex. A at A-7, ECF No. 1-1). The *Allen* complaint alleges

- 9 - 13cv44-WQH-JMA

that the Allen plaintiffs' injuries were caused in part because the MET tower "was defectively designed," and "[a]ll Defendants were the agents, employees, contractors, joint venturers and partners of each other ... imposing vicarious liability on each Defendant for the acts and/or omissions of each of the other Defendants." (Compl., Ex. B at B-34, B-37, ECF No. 1-1). The Court does not find that the *Allen* plaintiffs' case management statement or the contract between Shah and Renewable Resources Group "eliminate[s] the potential for coverage." *Waller*, 11 Cal. 4th at 19 ("[W]here the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the complaint suggest potential liability.") (citations omitted); *cf. Palp, Inc. v. Williamsburg Nat'l Ins. Co.*, 200 Cal. App. 4th 282, 289 (2011) ("[W]hen a suit against an insured alleges a claim that potentially could subject the insured to liability for covered damages, an insurer must defend unless and until the insurer can demonstrate, by reference to undisputed facts, that *the claim cannot be covered*. In order to establish a duty to defend, an insured need only establish the existence of a potential for coverage; while to avoid the duty, the insurer must establish the absence of any such potential. Doubts concerning the potential for coverage and the existence of duty to defend are resolved in favor of the insured.") (citing, *inter alia*, *Montrose*, 6 Cal. 4th at 299-300).

The Court finds that "the coverage question[s] [raised by Admiral's Complaint in this action] turns on facts to be litigated in the underlying [*Allen*] litigation." *Montrose*, 6 Cal. 4th at 301-02. Pursuant to the *Montrose* rule, "[t]o eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate." *Id.* at 301.

When considering the *Brillhart/Dizol* factors,[3] the Court finds that a stay of this action pending resolution of the *Allen* lawsuit is appropriate. As discussed above,

---

[3] *See Dizol*, 133 F.3d at 1225 ("The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory relief actions as a means of forum shopping; and it should avoid duplicative litigation.") (citations omitted).

Admiral's claim for declaratory relief regarding whether Admiral has a duty to defend or indemnify Shah necessarily requires an adjudication of factual matters at issue in the *Allen* lawsuit. "Federal courts should be reluctant to decide factual issues which are currently at-issue in state court." *State Farm Fire & Cas. Co. v. McIntosh*, 837 F. Supp. 315, 316 (N.D. Cal. 1993) ("Where a federal court determines such a factual issue, the parties may be collaterally estopped from litigating the issue further in the underlying state action. This disrupts the orderly adjudication of the underlying state case, since it forecloses the examination of some parts of the case while leaving other parts in need of resolution.") (citations omitted); *cf. Dizol*, 133 F.3d at 1225 ("If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court.") (citation omitted). "[W]ith the risk of duplicative litigation comes the risk of inconsistent outcomes.... Additionally, separate suits stemming from the same overall controversy and involving overlapping issues proceeding simultaneously on parallel tracks may waste scarce judicial resources." *OneBeacon Ins. Co.*, 2009 WL 2914203, at *6 (quotation omitted). To the extent Admiral filed this action in this Court in an effort to avoid the mandatory stay rule announced in *Montrose*, imposing a stay in this action would "discourage litigants from filing declaratory relief actions as a means of forum shopping." *Dizol*, 133 F.3d at 1225.

The Motion for Stay is granted. The Court declines to bifurcate those issues in this case which overlap with the *Allen* lawsuit from the other issues which do not overlap with the *Allen* lawsuit. This action is stayed pending further order of the Court.

**III.    Motion to Dismiss**

Because the Court has determined that a stay is appropriate in this case, the Motion to Dismiss the Counterclaim is denied without prejudice to renew the motion after the stay is lifted.

**IV.    Conclusion**

IT IS HEREBY ORDERED that the Motion for Stay is granted. (ECF No. 10). The Motion to Dismiss is denied without prejudice. (ECF No. 17). This action is

stayed pending further order of the Court. The parties shall file a status report as to the progress of the *Allen* lawsuit no later than six months from the date this Order is filed. Either party may file a motion to lift the stay when the *Allen* lawsuit is resolved or for other good cause. The Clerk of the Court shall administratively close this case; the case will be reopened when the stay is lifted, without prejudice to the rights of any party.

DATED: July 23, 2013

**WILLIAM Q. HAYES**
United States District Judge